UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEREMIAH JEROME GRIFFIN,<br><br>                              Plaintiff,<br><br>          -against-<br><br>CORPORATION COUNSEL, ET AL.,<br><br>                              Defendants. | 22-CV-8521 (LTS)<br><br>ORDER TO AMEND |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is currently detained in the Anna M. Kross Center on Rikers Island, brings this *pro se* action under 42 U.S.C. § 1983, alleging that Defendants violated his rights. By order dated October 7, 2022, the Court granted Plaintiff's request to proceed *in forma pauperis* (IFP), that is, without prepayment of fees.[1] For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 60 days of the date of this order.

## STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff Jeremiah Jerome Griffin brings his claims using the court's prisoner complaint form, to which he attaches numerous documents. Named as Defendants are: New York City Corporation Counsel; New York City Department of Correction (DOC); Legal Aid Society; "New York County Criminal Courthouse"; Legal Aid Society lawyer Joanne Dwyer; New York County Criminal Court Judge Paul McDonnell; Correction Officers Fatorma, Costelanos, and

Mendes; New York County Criminal Court Judge April Newbauer; and criminal defense lawyer Dean Vigliano. Plaintiff states that the events giving rise to claims occurred at the New York County Criminal Court and at various facilities on Rikers Island during May 2022 through June 2022.

The following allegations are taken from the complaint, which is often repetitive and appears to assert claims arising from several unrelated events. Legal Aid Society lawyer Dwyer, who was appointed to represent Plaintiff in his criminal proceeding, advised Plaintiff not to testify before the grand jury, which Plaintiff asserts constitutes "ineffective counsel." (ECF 2, at 10.) Dwyer "misrepresent[ed]" Plaintiff's wishes to the District Attorney, "which resulted in legal malpractice." (*Id.* at 4.) Judge McDonnell granted the Assistant District Attorney's "request to improperly extend the grand jury 4 days out" and the court failed to conduct "a 180.10 felony hearing which is deem prejudice and erroneous and violated my right to a speedy trial under N.Y. Crim. Proc. L. § 180.80 which resulted in my unlawful incarceration." (*Id.* at 4.) An attorney filed a petition for writ of *habeas corpus* on Plaintiff's behalf in the state court, but Judge Newbauer "illegitimately erroneously denied it on June 23, 2022 which resulted to prejudice and bias." (*Id.*) Plaintiff sent grievances to the "Inspector General Office of Court Administration, Commission on Judicial Conduct and Department of Justice Officer of Inspector General" about Judges McDonnell and Newbauer. (*Id.*)

Vigliano, another attorney appointed to represent Plaintiff, "committed legal malpractice" when he promised to "attach the briefing to the notice of appeal that he verbally started he filed in the" New York State Supreme Court, Appellate Division. (*Id.* at 11.) Plaintiff also suggests that Vigliano did not appear for a proceeding before Judge Newbauer and, in the past, had missed pre-arranged phone appointments. (*Id.*)

On an unspecified date, "NYC Dept. of Correction EMTC Facility housing area I main" failed to prevent another inmate from punching Plaintiff in the nose, causing Plaintiff to bleed on the white shirt that Plaintiff wore to the grand jury. (*Id.* at 4.) On September 20, 2022, DOC failed to produce Plaintiff for a dermatology appointment to continue his treatment for psoriasis, "which resulted in medical negligence." (*Id.* at 5.)

On September 13, 2022, while Plaintiff was in AMKC, Correction Officer Allen, who is not named as a defendant, "illegitimately deadlocked" Plaintiff's cell and denied him lunch. (*Id.* at 8.) On September 19, 2022, and September 20, 2022, Correction Officer Mulfort, who is not named as a defendant, and Correction Officer Mendes denied Plaintiff showers, legal phone calls, and access to the law library. (*Id.* at 9.) On September 20, 2022, Correction Officer Costelanos denied Plaintiff breakfast while Plaintiff was "deadlocked" in his cell. The complaint also states that, on an unspecified date, Correction Officer Fatorma "deadlocked" Plaintiff's cell and deprived him of breakfast, lunch, dinner, law library, recreation in the yard, and social services. (*Id.* at 5.) It is unclear from the complaint whether this is a separate incident.

Plaintiff alleges Defendants' actions

> affected my NYS registered corporations and Not for Profit organizations growth, Progress such as earnings and expansion and unpaid invoices for equipment also affected my livelihood such as paying the NYS obligated child support amount $1,600, also obstructed NY DOS legal formation of Metro Transload LLC, owed monthly arrears for (800) 439 6128 business line.

(*Id.*)

Plaintiff alleges that DOC held him in "unsanitary" and "overcrowded" cells when he was in EMTC, and that he was in the same holding pen as individuals who tested positive for Covid-19. (*Id.* at 8.)

Finally, Plaintiff states that DOC tampered with Plaintiff's legal mail on "multiple occasions." (*Id.*)

Plaintiff alleges that, as a result of Defendants' actions, he suffered weight loss, a bloody nose, mental distress, and a "fractured tooth." (*Id.* at 5.)

Plaintiff seeks money damages and asks the court to place liens on Defendants' asserts and property.

## DISCUSSION

Plaintiff's claims that Defendants violated his federal constitutional rights arise under 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). [2]

### A.       Improper Defendants

1.       Claims against Judges

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature."

---

[2] Although Plaintiff does not seek release from custody in this action, the Court notes that, on July 25, 2022, Plaintiff filed in this court a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241, in which Plaintiff challenges his pretrial detention on the grounds that he was denied the right to testify before the grand jury and that he was denied his speedy trial rights under N.Y. Crim. Proc. L. § 180.80. *See Griffin v. Warden-A.M.K.C.*, No. 22-CV-6302 (LTS) (S.D.N.Y.). By order dated July 29, 2022, the Court directed Plaintiff to file an amended Section 2241 petition stating the steps he has taken to exhaust his claims in the state courts, such as bringing a state-court *habeas corpus* petition and pursuing all levels of appellate review. ECF 1:22-CV-6302, 6. As of the date of this order, Plaintiff has not filed an amended petition in that action.

*Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 9-10; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).

Plaintiff fails to allege any facts showing that Judges McDonnell and Newbauer acted beyond the scope of their judicial responsibilities or outside their jurisdiction. *See Mireles*, 509 U.S. at 11-12. Because Plaintiff sues Judges McDonnell and Newbauer for "acts arising out of, or related to, individual cases before [them]," they are immune from suit for such claims. *Bliven*, 579 F.3d at 210. The Court therefore dismisses Plaintiff's claims against Judges McDonnell and Newbauer because they seek monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the in forma pauperis statute].").

2.      New York City Department of Correction and Corporation Counsel

Plaintiff's claims against the DOC and Corporation Counsel[3] must be dismissed because

an agency of the City of New York is not an entity that can be sued. N.Y. City Charter ch. 17,

§ 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law

shall be brought in the name of the city of New York and not in that of any agency, except where

otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007);

*see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is

generally prohibited from suing a municipal agency.").

In light of Plaintiff's *pro se* status and clear intention to assert claims against the City of

New York, the Court construes the complaint as asserting claims against the City of New York.

When a plaintiff sues a municipality under Section 1983, it is not enough for the plaintiff to

allege that one of the municipality's employees or agents engaged in some wrongdoing. The

plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See*

*Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government

may be liable under this section [1983] if the governmental body itself 'subjects' a person to a

deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell*

*v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654

---

[3] To the extent Plaintiff intends to assert claims against New York City Corporation
Counsel Sylvia Hinds-Radix in her individual capacity, he alleges no facts suggesting that she
was personally and directly involved in the events giving rise to Plaintiff's claims. *See Spavone
v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this
Circuit that personal involvement of defendants in the alleged constitutional deprivations is a
prerequisite to an award of damages under § 1983.") (internal quotation marks omitted); *see also
Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) ("To hold a state official liable under
§ 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation
directly against the official . . . ."). Accordingly, the Court declines to construe the complaint as
including Ms. Hinds-Radix as a defendant.

F.3d 324, 333 (2d Cir. 2011). In other words, to state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Here, Plaintiff does not allege any facts suggesting that the City of New York has a policy, custom, or practice that caused a violation of his constitutional rights. If Plaintiff wishes to assert municipal liability claims under Section 1983 against the City of New York in his amended complaint, he must name the City of New York as a defendant and allege facts suggesting that the City – which includes City agencies, such as the DOC – has a policy, practice, or custom that caused a violation of his rights.

3.    Private defendants

A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties therefore generally are not liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). Absent special circumstances suggesting concerted action between an attorney and a state representative, *see Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), the representation of a defendant by private counsel in state criminal proceedings does not constitute the degree of state involvement or interference necessary to establish a claim under Section 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender. *See Bourdon v. Loughren*, 386 F.3d 88, 90 (2d

Cir. 2004) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 324-25 (1981)); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (holding that legal aid organization ordinarily is not a state actor for purposes of Section 1983). As Defendants Legal Aid Society, Dwyer, and Vigliano are private parties who are not alleged to work for any state or other government body, Plaintiff has not stated a claim against these defendants under Section 1983.

    4.    New York County Courthouse

Plaintiff's claims against the "New York County Courthouse" must also be dismissed. Section 1983 provides that an action may be maintained against a "person" who has deprived another of rights under the "Constitution and Laws." 42 U.S.C. § 1983. The New York County Courthouse is not a "person" within the meaning of Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (state is not a "person" for the purpose of § 1983 claims); *Zuckerman v. Appellate Div., Second Dep't Supreme Court*, 421 F.2d 625, 626 (2d Cir. 1970) (court not a "person" within the meaning of Section 1983); *Whitley v. Westchester Cnty. Corr. Facility Admin.*, No. 97-CV-420 (SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997) (correctional facility or jail not a "person" within the meaning of Section 1983). Plaintiff therefore fails to state a claim against this defendant.

**B.**    **Conditions of Confinement**

Many of Plaintiff's allegations suggest that he is attempting to challenge the constitutionality of his conditions of confinement at AMKC. Plaintiff is essentially asserting that correction officers were deliberately indifferent to conditions during his confinement that posed a serious threat to his health or safety, and that they failed to provide him adequate medical care. As Plaintiff was a pretrial detainee during the events giving rise to his claims, the claims arise under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d

Cir. 2017). However, "a detainee's rights [under the Fourteenth Amendment] are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.* (quoting *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983)).

To state such a conditions-of-confinement claim, a plaintiff must satisfy two elements: (1) an "objective" element, which requires a showing that the challenged conditions are sufficiently serious, and (2) a "mental" element, which requires a showing that a correction official acted with at least deliberate indifference to the challenged conditions. *Id.*

For the objective element, a pretrial detainee "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health" or safety, which "includes the risk of serious damage to 'physical and mental soundness.'" *Id.* at 30 (citing *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)). "[P]rison officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Walker*, 717 F.3d at 125 (internal quotation marks omitted).

For the subjective element, a pretrial detainee must allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. The mere negligence of a correction official is not a basis for a claim of a federal constitutional violation under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

1.   Inadequate medical care

Plaintiff alleges that Defendants were deliberately indifferent to his medical needs. First, he alleges that DOC failed to produce him for a dermatology appointment to receive injections to

treat his psoriasis. (ECF 2, at 5.) However, Plaintiff does not allege any facts suggesting that his psoriasis rises to the level of an objectively serious medical condition. Even if the Court assumes that Plaintiff's psoriasis is an objectively serious medical condition, Plaintiff fails to allege facts suggesting that any defendant knew or should have known of an excessive risk to his health and ignored that risk. At best, Plaintiff alleges what may be an instance of negligence, but mere negligence does not rise to a constitutional violation actionable under Section 1983, see *Daniels*, 474 U.S. at 335-36; *Davidson*, 474 U.S. at 348. Accordingly, Plaintiff fails to state a claim for deliberate indifferent with regards to his dermatology appointment. The Court grants Plaintiff leave to replead his claim in an amended complaint. If Plaintiff repleads his claim arising from his missed dermatology appointment, he must allege facts suggesting that his condition was objectively serious and that one or more defendants had the requisite knowledge and, if the claim is asserted against the City of New York, that the alleged deprivation resulted from a policy, practice, or custom.

Second, Plaintiff alleges that on May 22 and May 23, 2022, he was held in a holding pen with individuals who tested positive for COVID-19. (*See* ECF 2, at 8.) Even if the Court assumes that exposure to individuals who tested positive for COVID-19 constitutes an objectively serious risk to Plaintiff's health, he does not allege facts suggesting that any of the named defendants were aware that the individuals had tested positive and then placed Plaintiff in the holding cell with those individuals, knowing that he would be exposed to COVID-19. In his amended complaint, Plaintiff should reallege his COVID-19-related claims, and should allege any additional facts suggesting that Defendants were deliberately indifferent to a serious condition. If Plaintiff names individuals as defendants, he must allege facts regarding their personal involvement in the alleged violations of his rights. If Plaintiff asserts such claims against the City

of New York, he must allege facts suggesting a policy, practice, or custom that resulted in deliberate indifference to a serious risk to his safety or health.

2.      Failure-to-protect

A pretrial detainee asserting a failure-to-protect claim under the Due Process Clause of the Fourteenth Amendment must allege facts suggesting that the actual failure to protect was sufficiently serious, and that correctional staff acted with at least deliberate indifference. *Darnell*, 849 F.3d at 29. Here, Plaintiff alleges that jail officials failed to prevent another detainee from punching him in the face. Even if the Court assumes that the threat to Plaintiff was sufficiently serious, he does not allege any facts suggesting that any defendant knew of or should have known that Plaintiff would be attacked and failed to prevent it. Plaintiff therefore fails to state a failure-to-protect claim under Section 1983.

3.      Denial of food

To amount to a constitutional violation, a deprivation of food or nutrients must create a serious danger to the health of the inmate. *See, e.g.*, *Hutto v Finney*, 437 U.S. 678, 683, 687 (1978) (holding in the context of the Eighth Amendment, a diet of fewer than 1,000 calories per day would be "intolerably cruel for weeks or months"); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) (holding that placing plaintiff on a nutritionally inadequate restricted diet for fourteen days was likely to cause serious harm); *Dixon v. Fishkill Corr. Fac.*, No. 17-CV-1123 (NSR), 2019 WL 2866489, at *3 (S.D.N.Y. July 2, 2019) (plaintiff's allegations that he did not receive a meal for over 30 hours on three occasions during a single week and that the food that

he was served was nutritionally inadequate amounted to a substantial deprivation of food under the Eighth Amendment).[4]

Plaintiff's allegations may be sufficient to satisfy the objective prong of the deliberate indifference standard. He alleges that he was denied multiple meals, although it is unclear from the complaint how many meals Plaintiff was denied, whether he was denied consecutive meals, and if so, how many consecutive meals he was denied. The Court grants Plaintiff leave to replead his denial-of-food claim. In his amended complaint, Plaintiff should reallege the facts stated in the original complaint. He should clearly state the dates on which he was denied meals, which meals he was denied, and state whether he was provided with adequate nutrition when he was permitted to eat. Plaintiff should also identify the individual defendant who denied him meals, and allege any facts suggesting that the defendant knew or should have known that denying Plaintiff food created an objectively serious risk and chose to ignore that risk.

4.      Access to recreation and social services

Plaintiff asserts that he was denied access to recreation, but he alleges no facts suggesting that being denied recreation for the time during which he was confined in his cell constitutes a condition posing a substantial risk of serious harm to Plaintiff.

Plaintiff further alleges that he was denied access to social services during the time he was confined to his cell. However, pretrial detainees "do not have a free-standing, affirmative constitutional right to social services." *Brown v. City of New York*, No. 14-CV-0188, 2015 WL 374935, at *4 (S.D.N.Y. Jan. 29, 2015) (citing *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000)); *see also Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991) (holding that the plaintiff's

---

[4] The objective prong of the deliberate indifference standard is the same under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. *See Darnell*, 849 F.3d at 30.

denial-of-social-services claim fails to allege a constitutional violation). Plaintiff's allegations that he was denied access to social services therefore fail to state a claim on which relief may be granted.

### C.     Access to Courts and Access to Counsel

The Court construes Plaintiff's allegations that he was denied access to the law library and the ability to make "legal calls" as asserting an access-to-courts claim under the First Amendment. Prisoners have "a constitutional right of access to the courts [that] gives rise to a number of derivative rights, including the right to access legal materials to prepare a case, and the right of indigent inmates to be provided with paper and pens to draft legal documents and stamps to mail them," *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (citing *Bounds v. Smith*, 420 U.S. 817, 824-28 (1977)), and "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law," *Bourdon v. Loughren,* 386 F.3d 88, 92–93 (2d Cir. 2004) (quoting *Bounds,* 420 at 821, 828). But assistance from prison authorities is "only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey,* 518 U.S. 343, 351 (1996) (internal quotation marks omitted). Access to the courts does not require prison authorities to furnish inmates with unlimited access to any and all resources that might support a prisoner in presenting his legal claim. *Id.* at 355. A claim that an individual's right of access to the courts has been denied may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" or from the loss or inadequate settlement of a meritorious suit that cannot now be tried. *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002).

To state a claim for denial of access to the courts, a plaintiff must allege facts showing that the defendant's conduct: (1) "was deliberate and malicious," and (2) "resulted in actual

injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotation marks omitted); *see also Harbury*, 536 U.S. at 415. To demonstrate actual injury, a plaintiff must allege: (1) a valid underlying cause of action separate from the right-of-access claim; and (2) frustration or hindrance of the litigation caused by the defendant's actions. *See Harbury*, 546 U.S. at 415.

Plaintiff's allegations that he was not able to use the law library or make legal calls during the day or two during which he was "deadlocked" in his cell fail to state a claim for denial of access to courts. He does not allege that he had a nonfrivolous legal claim that was frustrated or impeded due to the timing of his law library visits or his inability to make legal calls. Mere "delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citation omitted); *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001) (prison law libraries are merely "one constitutionally acceptable method to assure meaningful access to the courts"). If Plaintiff chooses to amend his complaint and replead these claims, he must include facts showing how the limitations on his access to the law library or inability to make legal calls hindered his nonfrivolous legal claim(s).

The Court also liberally construes Plaintiff's allegation that he was prohibited from making legal calls as asserting a claim that he was denied the ability to speak with counsel in his criminal case. "[T]he right to counsel and the right of access to the courts are interrelated, since the provision of counsel can be a means of accessing the courts." *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001). In cases involving a pretrial detainee's right to criminal defense counsel, both the due process right of access to the courts and the Sixth Amendment right to counsel are implicated. *Id.* at 187 (considering whether prison restrictions on pretrial detainees' visits with

their attorneys violated the detainees' rights to counsel and of access to the courts). The ability of an attorney to communicate privately and freely with his client is key to the constitutional guarantees of the right to effective assistance of counsel. *See United States v. Rosner*, 485 F.2d 1213, 1224 (2d Cir. 1973).

When a pretrial detainee contests his or her access to counsel, the court must consider whether the challenged prison conduct "unreasonably burden[s]" the detainee's "opportunity to consult with his attorney and to prepare his defense." *Benjamin*, 264 F.3d at 187 (citation and internal quotation marks omitted; *see also Grubbs v. O'Neill*, 744 Fed. Appx. 20, 22-23 (2d Cir. 2018) (discussing balancing test to determine if an institutional restriction burdens a pretrial detainee's Sixth Amendment right to counsel). A district court must balance the alleged burden posed by the institutional restriction and any proffered reasons for the restriction and consider the chilling effect the restriction may have on the right to counsel. *See Grubbs*, 744 Fed. App'x at 22-23.

Here, Plaintiff's bare assertion that he was denied "legal calls" during a one- or two-day period, construed liberally, does not suggest that Defendants "unreasonably burden[ed]" his opportunity to consult with his lawyer and prepare a defense in his criminal action. Plaintiff therefore fails to state a claim of denial of his right to access counsel. If Plaintiff has additional facts to support his access-to-counsel claim, he may allege them in his amended complaint.

**D.    Mail Tampering**

Plaintiff alleges that DOC tampered with his legal mail "on multiple occasions." (ECF 2, at 8.) A prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). Courts afford "greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Id.* To state a claim of mail tampering, a prison must show that prison

officials "regularly and unjustifiably interfered with incoming legal mail." *Id.* An isolated example of mail tampering is usually insufficient to establish a violation. *See id.*

Here, Plaintiff does not allege sufficient facts to state a claim of mail tampering. He alleges that DOC has tampered with his legal mail "on multiple occasions," but he does not allege the nature of the tampering, how often his mail was tampered with, or any facts suggesting that whatever tampering was done to his mail was done without justification. The Court grants Plaintiff leave to amend his complaint to allege additional facts to state a claim for mail tampering.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state valid Section 1983 claims, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims. The Court specifically grants Plaintiff leave to his Section 1983 claim arising from his conditions of confinement, his access-to-courts and access-to-counsel claims, and his mail tampering claims. If Plaintiff names judges in his amended complaint, his claims against those defendants will be summarily dismissed. If he names private parties, his claims against those parties will also be summarily dismissed, unless Plaintiff can show that their actions are attributable to the state.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

**CONCLUSION**

The Court dismisses Plaintiff's claims against Judges McDonnell and Newbauer because they seek monetary relief against defendants who are immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the in forma pauperis statute].").

The Court also dismisses Plaintiff's claims against the New York City Department of Correction, Corporation Counsel, Legal Aid Society, Dwyer, Vigliano, and New York County Criminal Courthouse for failure to state a claim on which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 22-CV-8521 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:    November 14, 2022
          New York, New York

                                     /s/ Laura Taylor Swain
                                     LAURA TAYLOR SWAIN
                                 Chief United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____
_____
_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

**AMENDED
COMPLAINT**

under the Civil Rights Act,
42 U.S.C. § 1983

-against-

_____
_____
_____
_____
_____
_____
_____
_____

Jury Trial:   ☐ Yes      ☐ No

(check one)

___ Civ. _____ (    )

*(In the space above enter the full name(s) of the defendant(s).  If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names listed in the above caption must be identical to those contained in Part I.  Addresses should not be included here.)*

I.      **Parties in this complaint:**

A.      List your name, identification number, and the name and address of your current place of confinement.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff's     Name_____
                ID#_____
                Current Institution_____
                Address_____
                _____

B.      List all defendants' names, positions, places of employment, and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant  No. 1     Name _____ Shield #_____
                     Where Currently Employed _____
                     Address _____
                     _____

*Rev. 01/2010*                                    1

Defendant  No. 2          Name  _____ Shield #_____

Where Currently Employed _____

Address _____

_____


Defendant  No. 3          Name  _____ Shield #_____

Where Currently Employed _____

Address _____

_____


<table>
<tr><td>Who did what?</td></tr>
</table>

Defendant  No. 4          Name  _____ Shield #_____

Where Currently Employed _____

Address _____

_____


Defendant  No. 5          Name  _____ Shield #_____

Where Currently Employed _____

Address _____

_____


## II.      Statement of Claim:

State as briefly as possible the <u>facts</u> of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.


A.      In what institution did the events giving rise to your claim(s) occur?

_____

_____


B.      Where in the institution did the events giving rise to your claim(s) occur?

_____


C.      What  date  and  approximate  time  did  the  events  giving  rise  to  your  claim(s)  occur?

_____

_____

_____


D.      Facts:_____

<table>
<tr><td>What happened to you?</td></tr>
</table>

_____

_____

_____

*Rev. 01/2010*                                          2

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Was anyone else involved?**

_____
_____
_____
_____
_____

**Who else saw what happened?**

## III.    Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.

_____
_____
_____
_____
_____
_____
_____
_____
_____

## IV.    Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   Administrative remedies are also known as grievance procedures.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

Yes _____    No _____

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

_____
_____
_____

B.      Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

       Yes _____      No _____      Do Not Know _____

C.      Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

       Yes _____      No _____      Do Not Know _____

       If YES, which claim(s)?
       _____

D.      Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

       Yes _____      No _____

       If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

       Yes _____      No _____

E.      If you did file a grievance, about the events described in this complaint, where did you file the grievance?
       _____

       1.      Which claim(s) in this complaint did you grieve?
        _____

        _____

       2.      What was the result, if any?
        _____

        _____

       3.      What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process.
       _____
       _____
       _____
       _____

F.      If you did not file a grievance:

       1.      If there are any reasons why you did not file a grievance, state them here:
        _____
        _____
        _____

_____
_____
_____

    2.    If you did not file a grievance but informed any officials of your claim, state who you informed, when and how, and their response, if any:

_____
_____
_____
_____
_____
_____

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

_____
_____
_____
_____
_____
_____
_____
_____

<u>Note</u>:    You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

## V.    Relief:

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you are seeking and the basis for such amount). _____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____
_____
_____
_____

**VI.   Previous lawsuits:**

<div style="border:1px solid">On<br>these<br>claims</div>

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes _____   No _____

B.    If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below.  (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff _____
Defendants _____

2. Court (if federal court, name the district; if state court, name the county) _____
_____

3.    Docket or Index number _____

4.    Name of Judge assigned to your case_____

5.    Approximate date of filing lawsuit _____

6.    Is the case still pending?  Yes _____   No _____

If NO, give the approximate date of disposition_____

7.    What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____
_____
_____

<div style="border:1px solid">On<br>other<br>claims</div>

C.    Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?

Yes _____   No _____

D.    If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff _____
Defendants _____

2.    Court (if federal court, name the district; if state court, name the county) _____
_____

3.    Docket or Index number _____

4.    Name of Judge assigned to your case_____

5.    Approximate date of filing lawsuit _____

6.      Is the case still pending?  Yes _____   No _____
        If NO, give the approximate date of disposition_____

7.      What was the result of the case? (For example:  Was the case dismissed?  Was there
        judgment in your favor?  Was the case appealed?)  _____
        _____
        _____


**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ____ day of _____, 20___.

Signature of Plaintiff      _____

Inmate Number             _____

Institution Address        _____

                          _____

                          _____

                          _____


<u>Note</u>:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide
        their inmate numbers and addresses.

I declare under penalty of perjury that on this _____ day of _____, 20__, I am delivering
this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for
the Southern District of New York.


Signature of Plaintiff:   _____