UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMIAH JEROME GRIFFIN,

                                        Plaintiff,

                    -against-

CITY OF NEW YORK et al.,

                                        Defendants.

22-CV-8521 (AS)

<u>OPINION AND ORDER</u>

ARUN SUBRAMANIAN, United States District Judge:

*Pro se* plaintiff Jeremiah Jerome Griffin sues the City of New York, Officer Cardona, Officer Patrick Fatorma, Officer Alima Yakubu, Officer Kasia Benoit-Jones, Officer Hewitt, Officer Mostif, Officer Richards, Officer Clarke, and Officer Nicholas Trocchia.[1] Defendants City of New York, Fatorma, Yakubu, and Benoit-Jones move to dismiss. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On June 18, 2024, the Court granted defendants' motion to dismiss Griffin's Fifth Amended Complaint. Dkt. 73. The Court gave Griffin "one final chance to amend his complaint." *Id.* at 1. After several extensions of the deadline to do so, Griffin amended his complaint on November 20, 2024. Dkt. 80.

Griffin's Sixth Amended Complaint makes largely the same allegations as the Fifth:

1. On June 10, 2022, he was walking from the intake medical clinic to the inmate housing area with Officer Trocchia when he was "punched by another detainee resulting in . . . clinical nasal fractures." *Id.* at 4. Officer Trocchia was there, but "did not attempt to intervene to stop the assault" and instead "mov[ed] his body sidewards[,] automatically dodging the oncoming inmate[']s frontward closed Fist punch." *Id.* After this incident, Griffin received "Nasal Saline rinse wash" and Tylenol. *Id.*

2. During June, July, and August 2022, he was "deliberately denied Law Library Services" by Officers Richards, Mostif, and Cardona. *Id.* at 9. This "hindered [Griffin's] efforts in pursuing a 'timely' notice of appeal . . . for the Meritorious Habeas Corpus petition denial dated: June 23rd, 2022." *Id.* Griffin says that he filed a grievance about his exclusion from the Law Library, and the Grievance Coordinator, "Ms. Weeks[,] refused to render a[]

---

[1] The Court uses only the last name of certain officers because Griffin does not provide the full name of those officers in his complaint.

disposition" and told him he "don't need a decision on those grievance cause he don't have rights." *Id.* at 5.

3. On July 23, 2022, Griffin and another inmate (Dwayne Murray) told "other inmates that officer Alima Yakubu contracted STD HiV Virus." *Id.* at 10. On July 24, 2022, Officers Yakubu, Fatorma, and Benoit-Jones "retaliated by deliberately deadlock[ing] plaintiff and [Murray] to their individual assigned cells for the entire whole dates/days" of July 24–28, 2022. *Id.* During this period, Griffin was "denied adequate nutrition" and "basic Needs Such as" showers, clothing, food, and medications. *Id.*

4. On November 30, 2022, Griffin asked Officer Hewit to open his cell door, and Officer Hewit ignored Griffin's request. Griffin then threatened to report Officer Hewit, and in response Officer Hewit opened Griffin's door, sprayed him with pepper spray, and then closed the cell door again. Griffin was refused medical treatment until four hours later. *Id.* at 11.

5. On December 24, 2022, Griffin asked Officer Ortiz to open his cell door. Officer Ortiz responded with verbal abuse and a racial slur and then directed another inmate (Matthew Kennedy) to bite Griffin's hand. Kennedy did bite Griffin's hand and drew blood, while Ortiz watched and laughed. Officers Ortiz and Miller then refused Griffin medical treatment until December 28, 2022. *Id.* at 12–13.

6. On February 21, 2023, Griffin was assaulted by two other inmates with makeshift weapons. Officer Clarke knew about and was present for the attack but did not directly intervene. Instead, Officer Clarke told the attacking inmates that they would get commissary snacks if they stopped attacking Griffin, and they ceased their attack in response. During the attack, Officer Clarke was the only correction officer in the area. *Id.* at 14.

Griffin seeks $9,000,000 in damages for "mental Anguish, reckless endangerment, violation of Fourteenth amendment due process Clause, deliberate indifference, punitive damages[,] and punitive penalties." *Id.* at 6.

Defendants moved to dismiss. Dkt. 87. Griffin's deadline to oppose the motion to dismiss was March 11, 2025. Dkt. 90. Griffin filed nothing on the docket until a letter dated May 21, 2025, and docketed on June 4, 2025, in which he requested a three-week extension of his time to oppose the motion to dismiss. Dkt. 92. His stated reason for requesting the extension was that he was placed in solitary confinement from February 21, 2025 to March 13, 2025. *Id.* To date, Griffin has filed no opposition.

## DISCUSSION

### I.    Griffin's motion for an extension is denied.

Federal Rule of Civil Procedure 6(b) states that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). In

evaluating whether there was "excusable neglect," the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380 (1993), "directed courts to consider the following factors: 1) the danger of prejudice to the opposing party; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay, including whether it was in the reasonable control of the movant, and 4) whether the movant acted in good faith." *Skyers v. United States*, 2015 WL 5671813, at *2 (S.D.N.Y. Sept. 25, 2015). "The Second Circuit has held that the third factor—the reason for the delay, and whether it is within the reasonable control of the movant—is the most important." *Id.* (citation omitted); *see also Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) ("[W]e and other circuits have focused on the third factor.").

Griffin explains that he missed the initial March 11, 2025, deadline because he was in solitary confinement from February 21, 2025 to March 13, 2025. This delay was outside of his control. However, he gives no explanation for why he waited more than two months after leaving solitary confinement and regaining access to the mail and legal resources to request more time from the Court. Courts have "long accorded *pro se* litigants 'special solicitude' to protect them from 'inadvertent forfeiture of important rights because of their lack of legal training.'" *Kotler v. Jubert*, 986 F.3d 147, 156 (2d Cir. 2021) (citation omitted). "But solicitude for *pro se* litigants does not require [courts] to excuse failure to comply with understandable procedural rules and mandatory deadlines." *Id.* Griffin's failure to respond by the March deadline may have been excusable, but his decision to wait more than two months after that to ask the Court for an extension is not. He gave no reason for the delay, the length of the unexplained delay is significant, and there is prejudice to the defendants given the multiple rounds of motion practice and amendments to the complaint. So Griffin's motion for an extension of time is denied.

However, Griffin's failure to respond to defendants' motion to dismiss does not warrant dismissal solely on that ground. *See Goldstein v. Cap. One Bank USA*, 2022 WL 17177790, at *2 (E.D.N.Y. Nov. 23, 2022) ("Even though Plaintiff has failed to file opposition papers[,] . . . the Court may not dismiss the complaint 'solely on the ground that [Plaintiff] did not respond to the motion'" and instead "must 'determin[e] based on its own reading of the pleading and knowledge of the law' whether the complaint states a valid claim." (quoting *McCall v. Pataki*, 232 F.3d 321, 321–23 (2d Cir. 2000)).

## II.    Defendants' Rule 12(b)(6) motion to dismiss is denied in part and granted in part.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (internal quotations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In evaluating a complaint, courts "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *Id.* (citation omitted). "[A] complaint filed pro se is held to a less stringent pleading standard than one filed by counsel" and is "liberally construe[d] . . . to state the strongest arguments that [it] suggest[s]." *Frederick v. Wells Fargo Home Mortg.*, 649 F. App'x 29, 30 (2d Cir. 2016).

**A.  Griffin's failure to exhaust is excused.**

Defendants argue that the case should be dismissed because Griffin failed to exhaust administrative remedies. Dkt. 88 at 5. The Prison Litigation Reform Act requires that, prior to bringing a case in federal court, "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints," and a court "may dismiss a complaint for failure to exhaust" only if "it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Id.* (quoting *Jones*, 549 U.S. at 216).

Defendants argue that Griffin's complaint indicates that he failed to "properly appeal[] any of his" grievances. Dkt. 88 at 7. The New York City Department of Correction has an Inmate Grievance and Request Program with four steps, they say, and Griffin only took the first step. *Id.* at 6–7. However, "[p]risoners need not comply with the exhaustion requirement . . . when administrative remedies are 'unavailable.'" *Taylor v. New York City Dep't of Corr.*, 849 F. App'x 5, 8 (2d Cir. 2021) (citation omitted). "An administrative procedure will be treated as unavailable for purposes of this exemption in at least three circumstances: (1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use'; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* (quoting *Priatno*, 829 F.3d at 123–24). The key inquiry is whether a "similarly situated individual of ordinary firmness [would] have deemed [the grievance process] available." *Lucente v. County of Suffolk*, 980 F.3d 284, 311–12 (2d Cir. 2020) (citation omitted).

Here, Griffin adequately alleges that the grievance process was unavailable to him because of "machination, misrepresentation, or intimidation" on the part of prison officials. He describes how he "filed multiple grievances," but the Grievance Coordinator, Ms. Weeks, informed him that he "don't need a decision on th[e] grievance[s] cause he don't have rights." Dkt. 80 at 5. She also "refused to render a[] disposition" on Griffin's grievances. *Id.* Weeks's assertion that Griffin didn't have rights while incarcerated is an example of an "instance[] in which [an] official[] misled . . . [an] individual inmate[] so as to prevent [his] use of otherwise proper procedures." *Ross v. Blake*, 578 U.S. 632, 644 (2016). As the Supreme Court observed in *Ross*, "such interference with an inmate's pursuit of relief renders the administrative process unavailable" to the inmate. *Id.*; *see also Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015) ("Grievance procedures *are* unavailable . . . if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process."). Just as in *Williams v. Suffolk County*, 2012 WL 6727160 (E.D.N.Y. Dec. 28, 2012), where the court denied a motion for judgment on the pleadings based on the plaintiff's failure to exhaust when officials told the inmate that the "grievance process could not help him," here Griffin's allegations, "if true[,] would be a basis for overcoming the exhaustion requirement." *Id.* at *5–6. And it is "premature to dismiss

[a] Complaint . . . when it is 'possibl[e]'" based on a prisoner's allegations that the grievance process was unavailable. *Wing v. Myers*, 2019 WL 6732967, at *6 (S.D.N.Y. Dec. 11, 2019) (second alteration in original) (collecting SDNY decisions emphasizing that, where the circumstances surrounding exhaustion are unclear, dismissal is inappropriate); *see also Henning v. N.Y.C. Dep't of Corr.*, 2016 WL 297725, at *3 (S.D.N.Y. Jan. 22, 2016) (denying motion to dismiss for failure to exhaust "because Plaintiff's papers *suggest* that nonexhaustion in this matter could be excused as unavailable" (emphasis added)).

At the motion-to-dismiss stage, Griffin's allegations that the official managing the grievance process categorically refused to process his grievances and tried to deter additional grievances by informing him he didn't have any rights while detained are sufficient to permit his case to proceed. They plausibly outline how a person "of ordinary firmness" in his situation would have believed that the grievance process was unavailable to him and there was not even "the *possibility* of some relief." *Edwards v. Arocho*, 125 F.4th 336, 347 (2d Cir. 2024) (citations omitted). But the "circumstances relative to exhaustion may look quite different on a motion for summary judgment[,] and nothing herein is intended to prejudice defendants' right to seek dismissal after close of discovery." *Hardimon v. Westchester County*, 2013 WL 5952862, at *4 (S.D.N.Y. Nov. 6, 2013) (citation omitted).

### B.  Griffin's § 1983 claims against the City of New York are dismissed.

42 U.S.C. § 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Griffin appears to allege that the conditions of his confinement violate his constitutional rights. The Court first addresses his claims against the City of New York.

"To establish municipal liability under [§ 1983], a plaintiff must demonstrate that the deprivation of his constitutional rights was 'caused by a governmental custom, policy, or usage of the municipality.'" *Deferio v. City of Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019) (quoting *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012)). "The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality; (2) actions directed by the government's 'authorized decisionmakers' or 'those who establish governmental policy'; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a 'constitutional violation[] resulting from [policymakers'] failure to train municipal employees.'" *Id.* at 589–90 (alterations in original) (citations omitted). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection . . . between the policy and the deprivation of his constitutional rights." *Id.* at 590.

Griffin doesn't identify a single city policy or custom that led to the harms he suffered, nor does he allege that the individual officers' actions were directed by higher-ups, that individual

officers' actions were in line with a "persistent and widespread practice," or that the individual officers' actions resulted from improper or insufficient training. It is true that Griffin details multiple incidents in his complaint, but each incident involved different individuals doing different things that caused different harms. While one of Griffin's allegations involves another inmate, Murray, who he says was treated similarly to him in that instance, the incident was one in which Griffin and Murray were acting as a unit and were disciplined by the same officers. So the incidents did not involve "substantially similar conduct" on the part of different officers. *Doe 1 v. City of Rockland*, 2025 WL 945873, at *16 (S.D.N.Y. Mar. 28, 2025) (quoting *Rutherford v. City of Mount Vernon*, 698 F. Supp. 3d 574, 612 (S.D.N.Y. 2023)). "[S]poradic or isolated incidents" such as those alleged by Griffin "will not give rise to municipal liability." *Benbow v. City of New York*, 2024 WL 5165073, at *4 (E.D.N.Y. Dec. 19, 2024) (citation omitted). In its order dismissing Griffin's Fifth Amended Complaint, the Court instructed Griffin to "allege facts suggesting that the city or a city agency has a policy, practice, or custom that violated his rights." Dkt. 73 at 4. Griffin has not done so, and his claims against the City of New York are dismissed.

### C. Griffin's § 1983 claims against Officers Yakubu, Benoit-Jones, and Fatorma remain in the case.

As defendants point out, only Officers Yakubu, Benoit-Jones, Fatorma, and Capehart have been served. Officer Capehart is no longer listed as a defendant in the Sixth Amended Complaint, and "amended complaints completely replace any previously filed complaints, [so the [C]ourt deems all prior claims against defendant [Capeheart] abandoned." *Spaulding v. N.Y.C. Dep't of Educ.*, 2015 WL 5560286, at *1 (E.D.N.Y. Sept. 21, 2015). Defendants' motion is brought on behalf of the City and Officers Yakubu, Benoit-Jones, and Fatorma, and the City has now been dismissed from the case. What remains is the three individual officers' motion, but defendants also make arguments concerning the claims against other, not-yet-served individual defendants, in which Officers Yakubu, Benoit-Jones, and Fatorma had no involvement.

It is well-established that "[d]efendants do not have standing to move to dismiss the substantive claims not actually asserted against them." *Bd. of Managers of Trump Tower at City Ctr. Condo. v Palazzolo*, 346 F. Supp. 3d 432, 462 n.4 (S.D.N.Y. 2018) (citing *Gordon v. Sonar Cap. Mgmt. LLC*, 962 F. Supp. 2d 525, 533 n.4 (S.D.N.Y. 2013)). The individuals who have not yet been served "have not moved to dismiss the claims against them," and "[t]o the extent that the officers, once they have been properly served and given notice of the claims against them, wish to move to dismiss on grounds such as failure to state a claim or qualified immunity, they will be permitted to do so." *Bell v. City of New York*, 2013 WL 6268083, at *3 (E.D.N.Y. Dec. 4, 2013). But the served officers' effort to dismiss the claims against the not-yet-served officers is denied.

As a result, the Court only addresses defendants' arguments as to individual claims against Officers Yakubu, Benoit-Jones, and Fatorma. These claims involve an incident in 2022 when Griffin and another inmate, Murray, told other inmates that Officer Yakubu contracted HIV, after which Officers Yakubu, Fatorma, and Benoit-Jones "retaliated by deliberately deadlock[ing] [Griffin] and [Murray] to their individual assigned cells" from July 24 to July 28. Dkt. 80 at 10.

During this time, Griffin says, he was "denied adequate nutrition" and "basic needs such as hyg[i]enic H2O showers," "clothing," and "medications." *Id.* On that basis, he asserts a "denial of food claim." *Id.* The Court liberally construes these allegations as seeking to make § 1983 claims against Officers Yakubu, Fatorma, and Benoit-Jones for unconstitutional conditions of confinement.

Griffin was in pretrial detention at the time of the alleged denial of food. "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). "A detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (citation omitted). To make out a § 1983 claim, a detainee must "satisfy two prongs": (1) "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process," and (2) "a 'subjective prong' . . . showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.*

Officers Yakubu, Fatorma, and Benoit-Jones's first challenge to the denial-of-food claim is that Griffin failed to exhaust administrative remedies, and the Court has already addressed that argument. Griffin also adequately pleads that his constitutional rights were violated. He alleges that he was "denied all food [and] meals" during a five-day deadlock, which led to him being "malnourished." Dkt. 80 at 10. "Allegations that a prisoner has received *no* food for a prolonged period . . . do not fail to satisfy the objective prong of a conditions of confinement claim." *Atadzhanov v. City of New York*, 2022 WL 4331304, at *5 (S.D.N.Y. Sept. 19, 2022). Courts in this Circuit have held that the objective prong is met when plaintiffs allege deprivation of food for two days, *id.* at *7, two-and-a-half days, *see Hodge v. Ruperto*, 739 F. Supp. 873, 876 (S.D.N.Y. 1990), and four days, *see Moss v. Ward*, 450 F. Supp. 591, 594, 596–97 (W.D.N.Y. 1978); *see also Corley v. City of New York*, 2017 WL 4357662, at *14 (S.D.N.Y. Sept. 28, 2017) (collecting cases establishing that when "plaintiffs asserted a complete denial of food," "courts have found such a deprivation to be actionable"). "Nor must a plaintiff allege an actual injury to state a claim when food is not provided at all." *Atadzhanov*, 2022 WL 4331304, at *5.

Here, Griffin describes receiving no food at all for five days and says this led to malnourishment, which clearly satisfies the objective prong. Griffin's allegations also satisfy the subjective prong's requirement that officials "acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). He says that Officers Yakubu, Fatorma, and Benoit-Jones "deliberately" deprived him of all food in retaliation for his announcement to other inmates that Officer Yakubu contracted HIV. Dkt. 80 at 10. The risk that depriving a person of food for five days can cause serious health problems is "obvious" and "otherwise must have been known" to Officers Yakubu, Fatorma, and Benoit-Jones when, according to Griffin's complaint, they purposefully denied Griffin food due to personal animus. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). This is sufficient to plead that these officers were "subjectively aware that [their] conduct creates such a risk." *Goode v. Cook*, 2025 WL 816302, at *3 (2d Cir. Mar. 14, 2025) (citation omitted).

Officers Yakubu, Fatorma, and Benoit-Jones then assert that they are entitled to qualified immunity. "Qualified immunity shields officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McCray v. Lee*, 963 F.3d 110, 119 (2d Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The officers argue that their actions with respect to Griffin were "objectively reasonable." Dkt. 88 at 25. They don't contest that the constitutional right to adequate conditions of confinement was clearly established. *Id.*; *see also Helling v. McKinney*, 509 U.S. 25, 32 (1993) (holding that prisoners have a constitutional right to having "basic human needs," like "food, clothing, [and] shelter" met (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989))). Instead, they say that "it is not objectively unreasonable for an officer to deny an inmate food *at a specific given time*." *Id.* But that's not what Griffin says happened. He alleges that he was denied *all* food for five consecutive days, and the officers don't make any arguments about why that deprivation was "objectively reasonable," even though they bear the burden of making that showing. *See Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997). Especially considering the particularly "formidable hurdle" for defendants to clear on a Rule 12(b)(6) motion, the officers haven't satisfied their burden. *Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020) (citation omitted); *see also Sabir v. Williams*, 52 F.4th 51, 64 (2d Cir. 2022) ("[A]dvancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch." (citation omitted)). The motion to dismiss the denial-of-food claim based on qualified immunity is denied, but the officers can raise this argument again at summary judgment.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. The Court will separately issue an order of service as to the defendants in this case who have not yet been served. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to terminate Dkt. 87.

SO ORDERED.

Dated: August 1, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge